UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

PROFESSIONAL CONSULTING
SERVICES S.A.S and IMMGRACION AL
DIA LLC,

    Plaintiffs,

v.

INMIGRACION OK LLC and OSCAR J.
BARBOSA,

    Defendants.

Civil Action No.:
2:23-cv-03038-WJM

OPINION

## WILLIAM J. MARTINI, U.S.D.J.:

    This matter comes before the Court upon Inmigracion OK LLC ("IOK") and Oscar J. Barbosa's ("Barbosa" and, together with IOK, "Defendants") Motion to Dismiss Professional Consulting Services S.A.S. ("PCS") and Immigracion al Dia's ("IAD" and, together with PCS, "Plaintiffs") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(7). ECF Nos. 18, 21. The Court decides the matters without oral argument. *See* Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions, and for the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**.

## I.   BACKGROUND[1]
###     A. Facts[2]

    Plaintiff PCS is a Colombian digital marketing company that provides "marketing services, client leads, and administrative support to attorneys." Am. Compl. at ¶ 13. Plaintiff IAD, a limited liability company based in South Carolina, is PCS's largest client. *Id.* at ¶¶ 1, 22. On May 1, 2020, PCS entered into a contract with InteRedes to develop a "proprietary Customer Relationship Management software ("CRM") designed to collect and organize the personal identifying information of potential Spanish-speaking individuals in need of immigration services." *Id.* at ¶ 14. Among other things, the contract gave PCS exclusive rights to market, commercialize, and distribute the CRM software while prohibiting InteRedes from developing similar software and sharing the CRM

---

[1] The Court has Federal Question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as Plaintiffs allege theft of trade secrets in violation of 18 U.S.C. §1836. The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. Am, Compl. at ¶ 9.
[2] The following allegations are taken from Plaintiffs' Amended Complaint and are accepted as true. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

software with third parties. *Id.* at ¶¶ 16-19. Plaintiffs allege IAD is a known and intended beneficiary of the contract. *Id.* at ¶ 22. PCS assists IAD by contacting prospective clients, capturing client information through the CRM software, and sharing it with IAD attorneys. *Id.*

After creating the CRM software for PCS in 2020, Edward Marin, the majority shareholder of InteRedes allegedly contacted Defendant Barbosa, who was practicing immigration law through a New Jersey law firm called Diaspora Law LLC. *Id.* at ¶¶ 27-28. On March 9, 2022, following his discussions with Marin, Barbosa created IOK and listed Diaspora Law LLC as IOK's registered agent. *Id.* at ¶ 29. IOK is a limited liability company and law firm organized under the laws of New Jersey. *Id.* at ¶ 1. Around that time, Marin allegedly created a copy of PCS's proprietary software for IOK's use. *Id.* at ¶ 29. On September 22, 2022, Marin created International Call Center S.A. ("ICC"), which is based in Colombia and staffed entirely by former PCS employees recruited by Marin. *Id.* at ¶ 30. IOK subsequently contracted with ICC for the use of the copied CRM software, including client leads contained in it. *Id.* at ¶ 31. Several employees began resigning from PCS to join ICC. *Id.* at ¶ 33. Upon reviewing the company issued laptop of an employee, Alvaro Murica, PCS discovered Murica had access to "CRM software (identical to PCS's proprietary CRM system) belonging to" IOK. *Id.* at ¶¶ 33-34. Upon further investigation of Murica's laptop, PCS discovered that IOK was using a CRM platform copied from PCS's CRM software, which was populated with PCS and IAD client data. *Id.* at ¶ 37. PCS also discovered: (1) hundreds of "browsing records" referring to IOK over December 21, 2022 and December 22, 2022, while Murica was still employed by PCS; and (2) two documents containing hundreds client records of IOK leads and previously engaged clients, which substantially matched IAD's client database. *Id.* at ¶¶ 35-37. PCS also observed that the format of the databases were substantially similar in font, font size, titles, and spacing. *Id.* at ¶ 38. IAD clients reported that former PCS employees communicated with them offering to continue providing services at prices lower than IAD. *Id.* at ¶ 40. In late 2022, PCS found itself with a dramatic decrease in revenue. *Id.* at ¶ 32.

On March 23, 2023, PCS sent IOK a cease and desist demand letter, insisting that IOK cease from using, distributing, or otherwise deriving economic benefit from PCS's CRM software. *Id.* at ¶ 43. PCS also demanded that within 21 days IOK provide a full description of how it obtained PCS's trade secrets, the steps it has undertaken to cease their use, and a written undertaking to forbear from any future use. *Id.* IOK did not respond to the demand and continued to use the illicit copy of PCS's CRM software. *Id.* at ¶¶ 45-46.

### B. Procedural Background

Plaintiffs filed their original complaint on June 2, 2023 and their Amended Complaint on November 3, 2023. ECF Nos. 1, 18. Defendants filed the instant Motion to Dismiss on December 1, 2023 with Plaintiffs Opposition and Defendants' reply on January 31, 2024 and February 22, 2024, respectively. ECF Nos. 21, 34, 37. Plaintiffs' Amended Complaint contains six counts. Count One requests injunctive relief preventing Defendants and anyone acting in concert with them from disclosing or using the CRM software and its

contents, preventing Defendants "IOK, Leads Inside, Marin, and ICC from tortiously interfering with PCS' contractual relationship with InteRedes,"[3] and prohibiting Defendants from interfering with PCS' business relationship with its current, former, and prospective clients. Am. Compl. at ¶¶ 49-52. Count Two alleges Defendants misappropriated trade secrets in violation of 18 U.S.C. § 1836 through the use of Plaintiffs' CRM software. *Id.* at ¶¶ 52-58. Count Three alleges Defendants misappropriated trade secrets in violation of the New Jersey Trade Secrets Act, § 56:15-1, by similarly using Plaintiffs' CRM software. *Id.* at ¶¶ 59-62. Count Four alleges tortious interference with contract as Defendants were allegedly aware of PCS' contract with InteRedes and "Marin and ICC provided IOK with PCS's proprietary CRM software… for their own economic benefit." *Id.* at ¶¶ 63-69. Count Five alleges tortious interference with business relations. Specifically, Plaintiffs allege Defendants were aware of the business relationship between PCS and IAD and knowingly interfered when they "provided access to the IOK platform to Murica while he was still working at PCS." *Id.* at ¶¶ 70-77. Lastly, Count Six alleges unjust enrichment. Defendants allegedly unjustly enriched themselves through their unlawful use of PCS's CRM software and the personal identifying information contained in the software. *Id.* at ¶¶ 78-80.

## II. LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878-79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that pursuant to Rule 12(b)(6) the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of

---

[3] The Court notes that "Leads Inside, Marin, and ICC" are not defendants in this action.

the case.'") (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)). Thus, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

## III. DISCUSSION
### A. Forum Non Conveniens

As an initial matter, Defendants argue the Amended Complaint should be dismissed on forum non conveniens grounds. Defendants contend that a tribunal in Colombia is an adequate alternative forum because: (1) two foreign proceedings in Colombia regarding this matter are already in process; (2) the alleged software, all key third-party fact-witnesses, all related documentation, and all parties except the Defendants are physically present in Colombia; (3) Defendants are amenable to process in Colombia; (4) Defendants can be served in person, by mail, or email pursuant to Articles 8 and 291 of General Procedural Code, 2022 (Law 2213, Art. 8 (Col.)); (6) Colombia recognizes a cause of action for misappropriation of a trade secret; (7) and the contract between InteRedes and PCS regarding the development of the CRM contains an arbitration agreement governed by Colombian law. Def. Mot. to Dismiss at 15-26. Defendants further argue that proceeding with this action in this Court would be inconvenient and impractical because it would require translation of almost every exhibit that will be used, it would require potential witnesses to travel long distances, and many un-joined witnesses reside outside this Court's ordinary subpoena power. *Id.* Lastly, Defendants claim the private and public interest factors favor dismissal. Sources of proof and fact witnesses are in Colombia, and New Jersey has little interest in software developed in Colombia by Colombian companies doing business in Colombia. *Id.* Plaintiffs, in opposition, argue that no adequate alternative forum exists. Defendants have not sufficiently demonstrated that a court in Colombia can cognize the Plaintiffs' causes of action or provide "the broad protection written into federal and New Jersey law." Pl. Opp. at 6-7. Plaintiffs further argue that Defendants have not met their burden demonstrating that either the public or private interests overcome Plaintiffs' choice of forum. *Id.* at 9.

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, (1947). "[W]hen considering a motion to dismiss on forum non conveniens grounds, a district court must first determine whether an adequate alternate forum can entertain the case." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010) (alteration in original). After finding that an adequate alternative forum exists, the district court must "determine[ ] the amount of deference due to the plaintiff's choice of forum" and "balance the relevant private and public interest factors." *Id.* The private interest factors include: "access to sources of proof; availability of compulsory process for attendance of unwilling

4

... witnesses;" "the cost of obtaining attendance of willing ... witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp.*, 330 U.S. at 508. The public interest factors include: the possibility of turning courts into "congested centers;" the likelihood that the case will burden a jury composed of people with "no relation to the litigation;" the probability that the case will "touch the affairs of many persons" in the community; and the chances that the court will be "at home with the ... law that must govern the case." *Id.* at 508-09. The adequacy of an alternative forum is determined by a defendant's amenability to process in that forum and a plaintiff's opportunity for redress there. If there is no adequate alternative forum, dismissal on forum non conveniens ground is not appropriate. *See Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1225-26 (3d Cir. 1995). The Supreme Court observed that foreign courts are rarely inadequate, *Piper*, 454 U.S. at 254, and federal courts consistently find Colombia to be an adequate alternate forum, granting dismissal on forum non conveniens grounds in a variety of cases.[4]

Here, Defendants point out they are amenable to suit in Colombia. Plaintiffs will have an opportunity for redress as Colombia recognizes a cause of action for misappropriation of a trade secret, which is the heart of Plaintiffs' Amended Complaint. The Court thus finds that Colombia is an adequate alternative forum. Next, the Court finds that a neutral amount of deference is warranted to Plaintiffs' choice of forum. Although a plaintiff's choice of forum is generally entitled to deference, that deference is far from absolute. Indeed, a foreign plaintiff's choice of a United States forum is generally entitled to less deference because it would be less reasonable to assume the choice of forum is based on convenience. *See Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001). *Compare Global Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1104 (9th Cir. 2020). Lastly, the Court must balance the public and private interest factors. This case involves a Colombian dispute, involving Colombian companies and citizens, regarding Colombian trade secrets. Although Plaintiff IAD is based in South Carolina, the crux of this litigation concerns the alleged misappropriation of a trade secret that was born between the work of PCS, a Colombian company, and InteRedes, a Colombian company. Indeed, while Defendants may have misappropriated trade secrets, it is in fact the non-party Edward Marin, majority shareholder of InteRedes and creater of ICC, that Plaintiffs claim facilitated said misappropriation. The bulk of Plaintiffs' Amended Complaint alleges that Edward Marin lured employees away from PCS, created

---

[4] *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 14 (1st Cir. 2000) (affirming district court's determination that Colombia is an adequate alternative forum); *Paolicelli v. Ford Motor Co.*, 289 F. App'x 387, 391 (11th Cir. 2008) (same); *Ballesteros v. Boeing Co.*, No. C22-0393 TSZ, 2023 U.S. Dist. LEXIS 58369, at *10 (W.D. Wash. Apr. 3, 2023) (granting motion to dismiss on forum non conveniens ground, finding that Colombia is an adequate alternative forum); *Serje v. Rappi, Inc.*, No. 19-cv-07415-VC, 2021 U.S. Dist. LEXIS 119103, at *2 (N.D. Cal. June 25, 2021) (finding Colombia to be an adequate alternative forum for a misappropriation of trade secrets case)

new companies, and began to work with other entities (including Defendants) to replicate Plaintiff PCS's business model using the allegedly stolen CRM software. It is therefore axiomatic that evidence relevant to both Plaintiffs' claims and Defendants' possible defenses will be in Colombia. Alleged communications and documentary evidence between Defendants and Marin will be in Colombia and potential witnesses including Edward Marin and former PCS employee Alvaro Murica will similarly be in Colombia. Practically speaking, the cost of transporting witnesses and translating documents would not make the trial of a case "easy, expeditious, and inexpensive." *Gulf Oil Corp.*, 330 U.S. at 508. Lastly, Colombian courts have a stronger interest than federal courts in the United States in seeing that Colombian trade secrets are enforced and protected. As a result, both public and private factors weigh in favor of dismissal on forum non conveniens grounds. The Court need not address the remainder of Defendants' arguments regarding failure to state a claim and failure to join necessary parties.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss for forum non conveniens is **GRANTED**. Plaintiffs' Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

An appropriate order follows.

WILLIAM J. MARTINI, U.S.D.J.

Date: May 15, 2024